# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ALEXIS WIEMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01383-TWP-MJD |
| | ) |
| HOOSIER HEIGHTS INDOOR CLIMBING FACILITY LLC, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON SUMMARY JUDGMENT

This matter is before the Court on Defendant Hoosier Heights Indoor Climbing Facility LLC's ("Hoosier Heights") Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 ([Filing No. 29](#)). Plaintiff Alexis Wiemer ("Wiemer") brought this action against Hoosier Heights for personal injuries sustained when he fell during a rock climbing activity. For the following reasons, the Court **GRANTS** Hoosier Heights' Motion for Summary Judgment.

## I. BACKGROUND

The material facts are not in dispute and are viewed in a light most favorable to Wiemer as the non-moving party. *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 728 (7th Cir. 2011).

Hoosier Heights, located in Carmel, Indiana, is a limited liability company which owns and operates an indoor rock climbing facility. The facility is open to the public and is available for individuals of all skill levels in recreational climbing. In order to use the facilities, Hoosier Heights requires all patrons to sign and acknowledge having read and understood a "Waiver & Release of Liability" form ("Waiver"). ([Filing No. 30-1](#).) The Waiver contains: general gym rules, exculpatory clauses relieving Hoosier Heights of liability, a medical authorization clause, an acknowledgement that the participant understands there are inherent risks to rock climbing with

some risks listed, authorization to allow the Hoosier Heights' staff to use any photographs taken during the patron's visit for promotional materials, and a signature line for the participant. (Filing No. 30-1 at 1.) At the top of the Waiver is Hoosier Heights' logo, address, and the name Hoosier Heights Indoor Climbing.

The Waiver states, in relevant part:

> **RELEASE AND ASSUMPTION OF RISK**: In consideration of being permitted to use the facilities of Hoosier Heights Indoor Rock Climbing Facility L.L.C., and mindful of the significant risks involved with the activities incidental thereto, I, for myself, my heirs, my estate and personal representative, do hereby release and discharge Hoosier Heights Indoor Rock Climbing Facility L.L.C. (hereinafter referred to as "Hoosier Heights") from any and all liability for injury that may result from my use of the facilities of Hoosier Heights Indoor Climbing, and I do hereby waive and relinquish any and all actions or causes of action for personal injury, property damage or wrongful death occurring to myself arising as a result of the use of the facilities of Hoosier Heights or any activities incidental thereto, wherever or however such personal injury, property damage, or wrongful death may occur, whether foreseen or unforeseen, and for whatever period said activities may continue. I agree that under no circumstances will I, my heirs, my estate or my personal representative present any claim for personal injury, property damage or wrongful death against Hoosier Heights or its employees, members, directors, officers, agents and assigns for any of said causes of actions, whether said causes of action shall arise by the negligence of any said person or otherwise.
>
> It is the intention of the undersigned individual to exempt and relieve Hoosier Heights and its employees, members, directors, officers, agents and assigns from liability for any personal injury, property damage or wrongful death caused by negligence.

(Filing No. 30-1.) The Waiver also contained a provision enumerating the risks inherent in the sport of rock climbing:

> **ACKNOWLEDGMENT:** I, the undersigned, acknowledge that I understand that there are significant elements of risk associated with the sport of rock climbing, including those activities that take place indoors. In addition, I realize those risks also pertain to related activities such as bouldering, incidental weight training, team building, fitness training regimens and equipment purchased or rented at Hoosier Heights. I realize that those risks may include, but are not limited to, injuries resulting from falls, equipment failures, entanglements, falling or dropped items, or the negligence of other climbers, participants, belayers, spotters, employees, or other users of the facilities. I acknowledge and understand that the above list is not

2

> inclusive of all possible risks associated with rock climbing or the use of the Hoosier Heights facilities and that other unknown and unanticipated risks may result in injury, illness, paralysis, or death.

*Id.* In addition to executing the Waiver, Hoosier Heights requires that all patrons attend and acknowledge undergoing orientation and training.

Wiemer visited Hoosier Heights in October 2014. On that date, he attended a facility orientation, which is an employee-guided training on how to boulder, belay, and top rope climb.[1] (Filing No. 30-7.) If a customer intends to use the "top rope" climbing area of the facility, they must first complete the "top rope" orientation and initial and sign the facility orientation form in the appropriate locations. Following his orientation and training, Wiemer signed a Waiver form.

Kayli Mellencamp ("Mellencamp"), a part-time Hoosier Heights employee with very little rock climbing experience, provided Wiemer's orientation and training. (Filing No. 30-6.) Mellencamp's employee training consisted solely of reviewing company provided instructional books on rock climbing and witnessing other employee orientations. (Filing No. 67-2 at 10-11 and 13-14.) Mellencamp had no other professional rock climbing experience.

On January 14, 2015, Wiemer, along with several co-workers, including Robert Magnus ("Magnus"), traveled to Hoosier Heights for recreational rock climbing. Magnus had also previously visited Hoosier Heights, and Wiemer's and Magnus' Waivers were already on file and under the terms of their agreements remained in effect (Filing No. 30-6; Filing No. 30-7). Wiemer was top rope climbing while Magnus belayed below (Filing No. 30-4). Unfortunately, Wiemer fell while he was climbing. Incident reports indicate that Wiemer fell approximately thirty-five

---

[1] Top rope climbing is a style of climbing in which a rope runs from a belayer at the foot of the climbing wall which is connected to an anchor system at the top of the wall and back down to the climber. Both climber and the belayer are attached to the rope through a harness and carabiner. The belayer is responsible for pulling the slack in the rope, which results in the climber moving up the wall. The belayer must keep the rope tight so that, in the event the climber releases from the wall, the climber remains suspended in the air and does not fall.

feet to the ground in a sitting position due to Magnus releasing a gate lever while he was belaying for Wiemer, which caused Wiemer to accelerate to the floor very quickly. ([Filing No. 30-4 at 1-4](#).) As a result of the fall, he sustained severe and permanent injuries to his back, as well as impaired bladder and bowel control. Wiemer filed this action alleging Hoosier Heights was negligent in its operations.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the

material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted). "It is equally well settled, however, that where no factual disputes are present or where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate. *Collins v. American Optometric Ass'n,* 693 F.2d 636, 639 (7th Cir. 1982).

## III. DISCUSSION

Hoosier Heights contends that Wiemer's signing of the Waiver, which contained an explicit reference waiving liability for Hoosier Heights' own negligence, absolves it of any liability and Wiemer expressly acknowledged that falling was a risk inherent in indoor rock climbing. Wiemer responds with two arguments in the alternative. First, he argues that the Waiver misidentifies the released party as "Hoosier Heights Indoor Rock Climbing Facility" because the Defendant's name, as alleged in the Complaint and as evidenced by the Indiana Secretary of State Certificate of Assumed Business Name, is "Hoosier Heights Indoor Climbing Facility." ([Filing No. 67-4.](#)) Second, Wiemer argues that Hoosier Heights negligence in the hiring and training of Mellencamp, was not an included "inherent risk" and this significantly contributed to his fall and injury.

### A. Hoosier Heights' Business Name

The waiver signed by Wiemer incorrectly lists the business name as 'Hoosier Heights Indoor Rock Climbing Facility L.L.C.' (Filing No. 30-1 at 1). Hoosier Heights acknowledges that its official name is Hoosier Heights Indoor Climbing Facility LLC and that the word "Rock" does not appear in its corporate filings with the Indiana Secretary of State although it appears on the Waiver at issue. Wiemer contends that a genuine issue of material fact exists regarding the validity

5

of the Waiver, because the Waiver that he signed failed to name the correct entity and this inaccuracy creates ambiguity as to who Wiemer contracted with.

The Court is not persuaded by Wiemer's argument. "Release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *Huffman v. Monroe County Community School Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). "The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone." *Huffman,* 588 N.E.2d at 1267. In addition, when a contract is unambiguous, Indiana courts look to the four corners of the document to determine the intentions of the parties. *Evan v. Poe & Associates, Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007). This analysis of contract interpretation is a question of law. *Evans v. Med. & Prof'l Collection Servs., Inc.*, 741 N.E.2d 795, 797 (Ind. Ct. App. 2001).

In *Evans*, the Indiana Court of Appeals held that a contract was unambiguous that misidentified a business name in the agreement but included the relevant address as that of the business. *Evans*, 741 N.E.2d at 798. The *Evans* court found that the plaintiff could not recover payment from the owner, "Evans Ford," in his personal capacity, even though that was the name indicated in the contract and the actual business was organized as a corporation under the name of "Evans Lincoln Mercury Ford, Inc." *Id.* at 796-98. The court did not resort to extrinsic evidence because the contract unambiguously identified the parties despite the misidentification. *See id.* at 798.

In this case, the Waiver is unambiguous as to identifying the parties to the agreement. Although the language of the Release and Assumption of Risk paragraph identifies "Hoosier Heights Indoor Rock Climbing Facility," the document's letterhead at the top displays "Hoosier

6

Heights Indoor Climbing," and includes the relevant business address of Hoosier Heights where Wiemer visited. Under these circumstances, the misidentification of Hoosier Heights does not operate to void the Waiver. Because the Waiver is unambiguous, the Court need not examine extrinsic evidence to determine the proper parties to the Waiver. Accordingly, summary judgment is denied on this basis.

**B.     Negligent Training**

Hoosier Heights contends that summary judgment is appropriate because the Waiver's explicit references to the "inherent risks" of rock climbing creates a binding exculpatory clause which releases Hoosier Heights from liability. Wiemer argues that a genuine issue of material fact exists regarding whether improper instruction and inadequate training, is an "inherent risk" of indoor rock climbing.

Under Indiana law, waivers containing exculpatory clauses absolving parties of liability for their own negligence must be specific and explicitly refer to waiving that party's negligence. *Anderson v. Four Seasons Equestrian Center*, 852 N.E.2d 576, 584 (Ind. Ct. App. 2006). Nevertheless, "an exculpatory clause's lack of a specific reference to the negligence of a defendant will not always preclude the defendant from being released from liability—such as when a plaintiff has incurred damages that are inherent in the nature of the activity." *Id.* (citing *Marsh v. Dixon*, 707 N.E.2d 998, 1000 (Ind. Ct. App. 1999)).

Wiemer contends that his fall was due to Mellencamp's improper training and instruction and this was not a risk that he agreed to assume (Filing No. 67 at 10). Further, he argues that improper training and instruction are not risks that are inherent in the nature of rock climbing. *Id.* Hoosier Heights responds that falls, as indicated by the Waiver, are a specific risk inherent in the nature of rock climbing and that Wiemer specifically waived any claims to injuries from falls by

7

signing the Waiver ([Filing No. 68 at 14](#)).  Hoosier Heights also contends that Wiemer waived any claims for improper training and instruction by its' employees as the Waiver contains an explicit release of Hoosier Heights' employees for any negligence.  *Id.* at 12.

Hoosier Heights acknowledges that negligence is generally a fact-intensive question; however, it responds that it is entitled to summary judgment because Wiemer waived any claims for liability on the basis of negligence.  *Id.* at 11. Hoosier Heights points the Court to *Anderson v. Anderson v. Four Seasons Equestrian Center*.  In *Anderson*, the Indiana Court of Appeals held that the defendant, an equine center, was entitled to summary judgment even though the waiver at issue did not contain a specific and explicit release of the equine center due to its own negligence because the plaintiff's injury of falling while mounting her horse was a risk inherent in the nature of the activity of horse riding. *Anderson*, 852 N.E.2d at 581.  The plaintiff argued that her injury was due to the equine center's negligence in caring for, conditioning, and training her horse.  The court found that the plaintiff's injury and resulting damages, including her characterization of the cause of those damages (*i.e.* conditioning and training of her horse), were risks that were inherent in the nature of horse riding and were exactly those for which she granted the equine center a release of liability by signing the waiver.  *Id.* at 585.

In the present case, Wiemer signed a specific and explicit Waiver, which released Hoosier Heights from liability due to its own negligence.  The Waiver explained that "rock climbing activity" at Hoosier Heights included, among other things,

> …team building, fitness training regimens and equipment purchased or rented at Hoosier Heights[,]…injuries resulting from falls, equipment failures, entanglements, falling or dropped items, or the negligence of other climbers, participants, belayers, spotters, employees, or other users of the facility.… I understand that the above list is not inclusive of all possible risks associated with rock climbing.

([Filing No. 30-6 at 1](#)).  In addition, a very similarly worded reference to liability from their own negligence is contained in the second paragraph of the 'Release and Assumption of Risk' section which states, "It is the intention of the undersigned individually to exempt and relieve Hoosier Heights and its employees, … from liability for any personal injury, property damage, or wrongful death caused by negligence."  ([Filing No. 30-1 at 1](#).)  The direct mentions of Hoosier Heights' own negligence adheres to the holding set in *Powell* that an exculpatory clause needs to be specific and explicit in referencing an absolving party's liability from negligence.

Similar to the result in *Anderson*, by signing the Waiver, Wiemer released Hoosier Heights from any liability resulting from its own negligence, including improper training and instruction.  Further, Wiemer's injury from falling was a risk that was inherent in the activity of rock climbing and explicitly noted in the Waiver.  Accordingly, summary judgment is appropriate.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court determines that, based on the undisputed material facts, Hoosier Heights is entitled to summary judgment as a matter of law.  Hoosier Heights' Motion for Summary Judgment ([Filing No. 29](#)) is **GRANTED**, and Wiemer's Complaint is **DISMISSED**.  Final Judgment will issue under a separate order.

**SO ORDERED.**

Date:  9/15/2017

*[Signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mary Beth Ramey
RAMEY & HAILEY
marybeth@rameyandhaileylaw.com

Richard D. Hailey
RAMEY & HAILEY
rich@rameyandhaileylaw.com

Jessica Whelan
BINGHAM GREENEBAUM DOLL LLP
jwhelan@bgdlegal.com

Phil L. Isenbarger
BINGHAM GREENEBAUM DOLL LLP
pisenbarger@bgdlegal.com